**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAX DENIS ANTOINE, | |
| *Plaintiff*, | |
| v. | Civil Action No. 09-1827 (KSH) |
| STAR LEDGER OF NEW JERSEY, PAUL BRUBAKER, | <u>OPINION</u> |
| *Defendants*. | |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

### I.       Introduction

The instant matter comes to the Court upon a motion to dismiss [D.E. 6] the complaint filed by plaintiff Dr. Max Antoine acting *pro se* [D.E. 1] against defendants Newark Morning Ledger Company, publisher of the New Jersey newspaper The Star-Ledger (the "Ledger"), and a reporter for the Ledger, Paul Brubaker (collectively, "defendants").

### a.   Background Information

The following is drawn from Antoine's complaint:

On April 8, 2009, Antoine was arrested—an arrest that he claims was falsely made and based on an unconstitutional search and seizure.  (Compl. ¶¶ 7-8.)  Two days later, on April 10, 2009, the Ledger published an article written by Brubaker, titled "Police allege Belleville man bilked immigrants in Essex," detailing the arrest.[1]  Antoine claims that the Ledger and Brubaker

---

[1] The article is attached as Exhibit 2 to the certification of Keith J. Miller ("Miller Cert.") in support of defendants' Federal Rule of Civil Procedure ("FRCP") 12(b)(6) motion to dismiss.  [D.E. 6.]  The Court may consider

published lies in the article and did so with an "extreme" bias against him, as they did not verify with him the circumstances of his arrest or conduct an independent investigation of the facts. (Compl. ¶¶ 8, 11.)

The complaint makes apparent that Antoine believes that defendants' bias emanates from their interconnectedness with local and state law enforcement officials, with whom Antoine has an extensive and litigious history. (*See generally id.*) Antoine asserts that he has incriminating evidence linking the Essex County, New Jersey Prosecutor's Office to criminal activity, such as their "planting, fabricating, [and] digital transferring of fake mug shots [sic] photographs" of him so that it could refute allegations that he made in 1996 charging the Irvington Police Department with police brutality and corruption. (*Id.* ¶ 17.) Antoine contends that defendants published the April 10, 2009 article to ruin him professionally because of a lawsuit he filed against the Irvington, New Jersey "Police Brutality Squad Dept" and the Essex County Prosecutors Office based on his brutality and corruption claim. (*Id.* ¶¶ 12, 19.) He alleges that the suit is pending before the Third Circuit. (*Id.*) Antoine thus asserts that the article was an act of defamation and a violation of his civil rights.

As a result of the allegedly false report, Antoine claims to have sustained "great irreparable harms and extended losses including personal and business losses, irreversible damages to his personal name, and employer's transnational name, business ethics, social class, strata and his apparent once venerated character." (*Id.* ¶ 20.) He seeks $77,777,777.00 in damages. (*Id.* ¶ 21.)

---

documents attached to or specially referenced in the second amended complaint, and matters of public record, without converting a motion to dismiss into one for summary judgment. *See Mele v. Federal Reserve Bank of N.Y.*, 359 F.3d 251, 255 n.5 (3d Cir. 2004).

Antoine asserts federal claims under 42 U.S.C. § 1983 for violations of his First, Fourth, Fifth, and Fourteenth Amendment rights, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), unspecified federal antitrust laws and regulations, the Federal Video Privacy Protection Act, 18 U.S.C. § 2710, as well as asserting unspecified violations of Federal Trade Commission and Federal Communications Commission protocols. The complaint also asserts an employment discrimination claim under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, *et seq.* Defendants have moved to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").

### b. The Ledger Article

The article at issue in this litigation reads in its entirety as follows:

Police allege Belleville man bilked immigrants in Essex
     By Paul Brubaker
     Star-Ledger Staff

A 39-year-old Belleville man has been arrested on charges of bilking several immigrants by posing as an immigration attorney without authorization to practice law, Essex County Prosecutor Paula Dow announced yesterday.

Max Antoine was apprehended late Wednesday after a three-year investigation by detectives from the Bloomfield Police Department, which was aided by the Essex County Prosecutor's Office economic crimes unit for the past year.

Antoine has been fraudulently practicing immigration law from a Bloomfield office since 2003, said Essex County Assistant Prosecutor Robert Grady. The investigation was prompted by several complaints to Bloomfield police, said Grady.

"It's basically a case of receiving payments and services never being rendered," said Paul M. Loriquet, a spokesman for the prosecutor's office.

Several documents from Antoine's office were confiscated and more charges are expected, Loriquet said. It remains to be seen if anyone's immigration status has been jeopardized, he said. He said police don't know how much was stolen but the investigation is continuing.

3

Loriquet said Antoine made false claims of having other credentials, including a real estate broker's license and a doctorate. "All we know for certain is he is a licensed private detective," he said.

Antoine faces charges of theft by deception, unauthorized practice of law and conspiracy to traffic false government documents and, if convicted, could be sentenced up to 15 years in prison, said Loriquet.

Antoine is being held at the Essex County Jail with bail set at $75,000 with no 10 percent option, said Loriquet.

(Miller Cert., Exh. 2.)

## II.     Standard of Review

In deciding a motion to dismiss under FRCP 12(b)(6), the Court is "required to accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed if the plaintiff's allegations, taken as true, fail to state a claim. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 (3d Cir. 1994). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

## III.    Discussion

Antoine's claim under 42 U.S.C. § 1983 alleges that the Ledger and Brubaker infringed on his First, Fourth, Fifth, and Fourteenth Amendment rights. (Compl. ¶ 7.) For this claim, and throughout the suit, Antoine attempts to link defendants' act of publishing a newspaper article with the past conduct of state actors—specifically, the Bloomfield Police Department, the Irvington Police Department, and the Essex County Prosecutors Office. For example, in

paragraph 1(W), where he alleges that "[f]reedom of the Press was vested under the First Amendment Right of our Federal Constitution [and] does not in any explicit way immune [sic] reports from CIVIL AND CRIMINAL LIABILITY, especially when attempting to maliciously deprive private citizens of their constitutional rights to privacy, [and] unlawful search and seizures," Antoine seeks to intertwine defendants' article with the allegedly unlawful search and seizures conducted by his arresting officers.  In paragraph 5, Antoine characterizes the Ledger as acting under color of state law:  "The defendant, Star Ledger, is also a duly licensed [sic] by the state of New Jersey to legally conduct its print business; however, it is not immune to knowingly defame good reputations . . . and venerated names of New Jersey private citizens and businesses alike *under color of [] New Jersey State Law*."  Again in paragraph 12, he links up defendants with law enforcement:

> [D]efendants have also purposefully defamed and boycotted . . . Plaintiff Dr [sic] Max Denis Antoine by publishing fake, false, and premeditated stories . . . , knowing that the Essex County Prosecutors [sic] charges were pre-fabricated, criminally planted defamatory statements, and taken from the unauthorized police officers, and covert detectives of the local Bloomfield Municipal Police Dept, and also from a Perpetuator "AKA" as [sic] Mr. David Sanabria of the Essex County Prosecutors Office.

> Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

Thus, "[t]he Supreme Court has set forth the two essential elements of a § 1983 action: (1) the conduct complained of was committed by a person acting under color of state law; and (2) this conduct deprived a person of rights, privileges, or immunities secured by the Constitution

or laws of the United States." *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993). To act under color of state law, a defendant must have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988).

Where named defendants are not state or municipal officials but private individuals, like the Ledger and Brubaker, the Third Circuit instructs that "[a] private action is not converted into one under color of state law merely by some tenuous connection to state action. The issue is not whether the state was involved in some way in the relevant events, but whether the action taken can be fairly attributed to the state itself." *Groman v. Township of Manalapan*, 47 F.3d 628, 639 (3d Cir. 1995) (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)). The inquiry, stated another way, is "whether the State provided a mantle of authority that enhanced the power of the harm-causing individual actor." *NCAA v. Tarkanian*, 488 U.S. 179, 192 (1988).

According to the pleadings, defendants' article was defamatory, lacked proper investigation, and was written with full knowledge that his arrest was premised on unconstitutional acts by the Essex County Prosecutors office committed in retaliation for his prior accusations against them. Nowhere in the complaint, however, does he assert that defendants contributed to the underlying acts of his false arrest, illegal search and seizure, or the unspecified abuse he suffered from the Irvington Police Department in 1996. Instead, he alleges that defendants were responsible for the violations of his First, Fourth, Fifth, and Fourteenth amendment rights because they reported a false story, despite knowing the true facts behind the matter. These allegations do not state a claim under § 1983 because Antoine has not pleaded facts demonstrating that the defendants were clothed with the authority of the state.

The Third Circuit addressed a similar suit in *Lewis v. City of Renton Police Department et al.*, 175 F. App'x 552, 554 (3d Cir. 2006), where it affirmed a district court's dismissal of a *pro se* complaint against newspaper defendants, holding as follows:

> Essential to an action under § 1983 are allegations that a person acting under color of state law engaged in conduct depriving a plaintiff of his constitutional rights. *See Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999); *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993). Because the newspaper defendants are private parties and there is simply no indication that they acted under color of state law, the District Court did not err in dismissing Lewis' claims against them.

*Id.*

Notwithstanding Antoine's claims that defendants shared in the state actors' bias against him and ill-intent to harm him, he does not sufficiently aver with facts that in publishing the article, defendants engaged in conduct "fairly attributed to the state itself." *See Groman v. Township of Manalapan*, 47 F.3d at 639.

Antoine also brings federal claims under Title VII, federal antitrust law, and the Federal Video Privacy Protection Act. Antoine alleges that defendants defamed him and his employers in violation of Title VII and the NJLAD laws against employment discrimination. (Compl. ¶ 9.) Title VII and the NJLAD protect *employees* from adverse *employment actions* on the basis of their status as individuals within a recognized protected class. *See* 42 U.S.C. § 2000e-2(a); N.J.S.A. 10:5-12. Antoine, however, does not allege in his complaint that defendants employed him, so Title VII and NJLAD afford him no relief on these facts.

Likewise, Antoine has failed to state a claim for relief under federal antitrust law or the Video Privacy Protection Act, 18 U.S.C. § 2710. Antoine appears to be suing under federal antitrust law because defendants were allegedly "boycotting" and damaging his business by publishing the article on his arrest. (*See* Compl ¶ 9.) Section 1 of the Sherman Act, 15 U.S.C. §

7

1, governs federal antitrust claims of illegal "group boycotts." *See Weiss v. York Hosp.*, 745 F.2d 786 (3d Cir. 1984). The Third Circuit has held that a claim under § 1 of the Sherman Act "requires proof of a contract, combination or conspiracy, a restraint of trade, and an effect on interstate commerce." *Miller v. Indiana Hosp.*, 843 F.2d 139, 141 (3d Cir. 1988). Here, at a minimum, Antoine's pleadings do not allege any contract or effect on interstate commerce, and the Court finds that they fail to state a claim for an illegal boycott.

The Video Privacy Protection Act can be violated when: (1) a video tape service provider discloses personally identifiable information regarding a customer without the customer's permission; (2) personally identifiable information from video tape rentals is obtained in any manner and is "received in evidence" in an adversarial proceeding; and (3) a person fails to timely destroy a customer's personally identifiable information. *See Dirkes v. Borough of Runnemede*, 936 F.Supp. 235, 239 (D.N.J. 1996) (Brotman, J.). Antoine has not pleaded anything to implicate that videotapes or information stemming from videotape rentals were involved in defendants' alleged misconduct.

To the extent that Antoine brings state law claims for defamation and libel against defendants, section 28 U.S.C. § 1367(a) of the Judicial Improvements Act of 1990 states that federal courts "shall have supplemental jurisdiction" over claims if they are "part of the same case or controversy" over which the court has original jurisdiction. Subsection (c) of the statute provides that a district court may decline to exercise jurisdiction if it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c). The Court has granted defendants' motion to dismiss all of Antoine's federal law claims, and declines to exercise supplemental jurisdiction over his remaining state law claims. *See Bacon v. Carroll*, 232 F. App'x 158, 160 (3d Cir. 2007).

IV.     Conclusion

For the forgoing reasons, defendants' motion under FRCP 12(b)(6) is granted on Antoine's federal claims and his claim under the NJLAD, and the complaint will be dismissed. An appropriate order will be entered.

/s/Katharine S. Hayden

Katharine S. Hayden, U.S.D.J.